## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **STEVEN HEATH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 2:13-cv-00386-JDL** |
| **MEGAN BRENNAN,** | ) |
| **Postmaster General,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Steven Heath, a former employee of the United States Postal Service, has brought a suit for disability discrimination, alleging that the Postal Service subjected him to a hostile work environment, failed to accommodate his disabilities, and breached a settlement agreement.  ECF No. 1.  The Postal Service has moved for summary judgment on each of Heath's claims.  ECF No. 35.  Heath has filed a cross-motion on his claim for failure to accommodate.  ECF No. 31.[1]  After careful consideration, I grant the Postal Service's motion in part and deny it in part, and deny Heath's cross-motion.

---

[1] The Postal Service has also filed a counterclaim against Heath, alleging breach of contract and unjust enrichment.  ECF No. 9 at 10.  Neither party has moved for summary judgment on this claim.

# I.  FACTUAL BACKGROUND

Viewed in the light most favorable to Heath as the non-movant,[2] the summary judgment record reveals the following:

## A.    Heath's Employment Background

Steven Heath was employed by the Postal Service from 1982 until 2006 as a letter carrier based out of the Postal Service's Auburn office.  ECF No. 36 at 1, 19; ECF No. 55 at 1.  In 1993, Heath developed tendinitis in both elbows and had to begin wearing arm braces.  ECF No. 32 at 2; ECF No. 57 at 1.  Heath's tendinitis prevented him from fully performing his duties as a postal carrier, which necessitated modifications to his duties.  ECF No. 39-1 at 23.

Heath's attempts to obtain accommodations for his tendinitis were met with some resistance.  At one point, Heath's union representative approached a manager about establishing accommodations for Heath and was told, "I'll give him accommodations.  I'll kick his ass."  ECF No. 34-1 at 29.  Heath eventually filed three complaints with the Equal Employment Opportunity Commission that resulted in three consecutive settlement agreements with the Postal Service – one in March 1999, another in June 1999, and the third in June 2000.  ECF No. 41 at 2.  Two of these agreements included provisions requiring that Heath's supervisors be educated about his medical restrictions.  *See* ECF No. 41-1 at 2; ECF No. 41-3 at 3.

Heath's need for physical accommodations elicited some negative comments from his co-workers and from management.  ECF No. 34-1 at 3.  Supervisors criticized

---

[2]  Heath has moved for summary judgment on one of the three claims at issue.  *See* ECF No. 31.  On his cross-motion, I also weigh the facts in the Postal Service's favor, below.

Heath's productivity, and this criticism occasionally led to confrontations.  *See* ECF No. 38-3 at 2-3.  Co-workers "gave [Heath] a hard time," *see* ECF No. 39-1 at 137, and publically spoke about the status of his disability, *see* ECF No. 58-4 at 2.  In one incident in either 2003 or 2005, a co-worker saw Heath wearing wrist braces and commented that Heath must have needed the braces because he had been masturbating.  ECF No. 39-1 at 26; ECF No. 38-3 at 4.

Over time, Heath developed mental health issues.  In 1998, he was diagnosed by Dr. C.D.M. Clemetson with a major depressive episode, which Dr. Clemetson noted "seems [to have been] brought on and aggravated by the problems he has been having at work, following his arm injury."  ECF No. 33-1 at 3.  Shortly after this diagnosis, Dr. Clemetson wrote a note to Kathy Dyer, the occupational health nurse administrator for the Northern New England District of the Postal Service, detailing Heath's diagnosis.  *Id*. at 5.  The letter further noted, "[f]rom the psychiatric point of view, it is very important that [Heath] not be harassed by his seniors at work."  *Id*.

As part of Heath's resulting workers' compensation claim for emotional disabilities, a dispute arose between Dr. Clemetson and another medical examiner as to whether Heath's mental health issues were attributable to his work environment.  *See id*. at 31.  A psychiatrist retained to resolve this dispute, Dr. David Bourne, diagnosed Heath in 2005 with major depressive disorder and an anxiety disorder, and found that the issues were "significantly related to . . . work-related events."  *Id*. at 33.  Bourne also wrote in his report that "[Heath] should avoid stressful

confrontations, and the employer should be thoughtful in how it deals with Mr. Heath." *Id.* at 34.

Dr. Bourne also completed a Department of Labor work capacity evaluation form, which asked him to "please describe the duties or work environment(s) which are suitable for your patient." *Id.* at 36. Dr. Bourne wrote, "work with a supportive, understanding supervisor at a comfortable pace. Avoid conflicts with co-workers, avoid derogatory remarks and time-sensitive demands." *Id.* Following Dr. Bourne's diagnosis, Heath's workers' compensation claim for psychological disabilities was approved in March of 2005. ECF No. 32 at 9; ECF No. 57 at 8.

One of Kathy Dyer's duties was to work with employees and management to clarify employees' medical restrictions. ECF No. 34-2 at 5-6. When Heath received an M-1 or CA-17 form from a medical visit related to his workers' compensation claim, Dyer would forward the paperwork to Heath's supervisors. *Id.* at 8. Dyer also spoke with Michael Foster, the Postmaster at the Auburn office, about Heath's psychological needs. *Id.* at 10. In 2003, she advised Foster "to be thoughtful in your communication, to be sensitive to his condition." *Id.*

In June of 2005, Heath had a confrontation with Tom Robinson, one of his supervisors. *See* ECF No. 77 at 8-11. Robinson approached Heath to remind him not to discuss work while in the break room. *Id.* at 8-9. Heath responded that Robinson should be avoiding unnecessary confrontations with him, and Robinson did not appear to understand what Heath meant. *Id.* at 10-11. Robinson's response caused Heath to become concerned that reports, such as that from Dr. Bourne, were not being

brought to his supervisors' attention, and he believed that his supervisors didn't know how to handle his psychological issues.  *Id*. at 12.  Heath then went to see Michael Foster to tell Foster it did not appear that Robinson "understood what it means to be an understanding supervisor."  *Id*.

**B.     July 12, 2005 Modified Job Offer**

Around this same time, Michael Foster prepared a modified job offer for Heath. ECF No. 37 at 5.  Modified job offers are created as a result of discussions between an employee and his supervisors, and alter the duties that would typically be required of an employee if the employee did not have medical restrictions.  *Id*. at 3.  Foster spoke with Heath before drafting the modified job offer.  *Id*. at 5.  He also incorporated the recommendations of an M-1 practitioner's report from Dr. Frederick van Mourik, which recommended "4 hrs/day, 5 days/wk. Early in, early out" due to Heath's "PTSD/Anxiety disorder," and a CA-17 duty status report form from Dr. van Mourik that recommended these same limited hours "due to psychological issues."  *Id*. at 4-5.

The modified job offer listed Heath's "modified rehab duties."  ECF No. 38-2 at 2.  These included physical restrictions such as no lifting over 10 pounds, and also incorporated the modified hours schedule recommended by Dr. van Mourik.  *Id*. Heath also asked Foster to further modify his hours so that he could come in at an earlier hour than other postal carriers in order to avoid confrontations with them. ECF No. 39-1 at 42.  This request was adopted.  *Id*. at 42-43.  Heath accepted the offer, ECF No. 38-2 at 2, and the modified duties and schedule remained in effect during the remainder of Heath's employment at the Postal Service, ECF No. 37 at 5.

However, after accepting the offer, Heath remained worried that his supervisors would not adequately understand his job restrictions and the need for him to avoid stressful confrontations at work. ECF No. 34-1 at 10-11. Accordingly, he sent a three-page letter to Foster dated July 28, 2005, which listed incidents Heath had had with his co-workers and supervisors over the prior 12 years. *See* ECF No. 38-3. The letter asked how Heath's previous settlement agreements could be better implemented, and directed Foster's attention to two of Heath's prior medical reports. *Id*. at 4. Subsequently, Heath, Foster, and Thurston spoke briefly about the letter, *see* ECF No. 34-1 at 10-11, but no further modifications were made to Heath's job duties.

**C.     The Events of September 9, 2006**

The events central to this case occurred on September 9, 2006.[3]   Heath's account of the day, which I credit for the purposes of summary judgment, is as follows.

On the morning of September 9, Heath needed the key to another postal station in order to run an errand there. ECF No. 39-1 at 51. Michael Thurston, a supervisor, instructed Heath to go into the break room and obtain a key from David Fleener. *Id*. at 54. Instead, Heath asked a co-worker, John Vierra, to speak with Fleener for him because Heath was anxious about encountering certain other employees in the break room. *Id*. at 55; ECF No. 34-1 at 18-19. Vierra ran into Thurston on his way to the break room, and the two had a conversation. ECF No. 39-1 at 56. Thurston then

---

[3] The record is inconsistent as to whether the day in question was September 6 or September 9. *See* ECF No. 39-1 at 49; ECF No. 42 at 2. Plaintiff acknowledges this confusion and suggests that September 9 is the correct date. ECF No. 52 at 12. As the exact date does not appear material to the parties' dispute, I treat the day in question as September 9 for the sake of consistency.

gestured for Heath to walk to where Thurston was standing. *Id*. Heath repeatedly shook his head no – again, because he was reluctant to move somewhere in the post office where he might encounter mail carriers with whom he had difficulties in the past. *Id*. According to Heath, Thurston then "puff[ed] himself up" and said, "Come here now." *Id*. at 61. Thurston "look[ed] at [him] mean." *Id*. at 63. Eventually, Heath joined Thurston, and told Thurston, "How come you're calling me down here, Mike? You know I've got [an] issue." *Id*. at 65. Heath then offered to go get the paperwork evidencing his work restrictions. *Id*. Thurston initially said, "Go get them," but, as Heath moved away, he "hollered," "Never mind. Go home." *Id.*

After leaving as instructed, Heath never returned to work at the Postal Service. ECF No. 36 at 17; ECF No. 55 at 14. He did not attempt to contact any of his Auburn supervisors about the incident or about returning to work. ECF No. 36 at 18; ECF No. 55 at 14. Rather, Heath called the Postal Service's human resources office in Portland and stated that he would not be contacting anyone from the Auburn office and that no one from the Auburn office should attempt to contact him. ECF No. 36 at 19; ECF No. 55 at 15.

**D.   The Administrative Process**

On September 30, 2006, Heath submitted his pre-complaint counseling forms related to the September 9 incident. ECF No. 41-7 at 2. These forms limited Heath's allegations to Thurston's actions on September 9, alleging that Thurston had discriminated against him because of his disability and breached the prior EEO settlements. *Id*. at 2-3. After the conclusion of his pre-complaint counseling, Heath pursued his claim through the Merit Systems Protection Board, which ultimately

decided that it lacked jurisdiction.  *See* ECF No. 41-11 at 10.  Heath then turned to the EEOC, where he filed a complaint on June 22, 2009.  ECF No. 43 at 1.  His EEOC complaint was broader in scope than his initial, pre-complaint counseling forms, raising 13 separate counts including hostile work environment, failure to accommodate, breach of settlement agreements, retaliation, and intentional discrimination.  *Id*. at 4.

The EEOC issued a preliminary decision on April 22, 2013, ECF No. 41-14 at 21, finding in favor of Heath on his failure to accommodate claim, and in favor of the Postal Service on Heath's other claims, *id*. at 20.  Heath filed his complaint in this court prior to a damages hearing at the EEOC, thus bringing the administrative process to an end.  *See* ECF No. 1 at 9.

## II.  SUMMARY JUDGMENT STANDARD

### A.    Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).  In making that determination, a court must view the evidence in the light most favorable to the non-moving party.  *Johnson v. Univ. of Puerto Rico,* 714 F.3d 48, 52 (1st Cir. 2013).

### B.    Local Rule 56

Local Rule 56 defines the evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment. First, the moving party must file a statement of material facts that it claims are not

in dispute, with each fact presented in a numbered paragraph and supported by a specific citation to the record. *See* Loc. R. 56(b). Second, the non-moving party must submit its own short and concise statement of material facts in which it admits, denies, or qualifies the facts alleged by the moving party, making sure to reference each numbered paragraph of the moving party's statement and to support each denial or qualification with a specific citation to the record. Loc. R. 56(c). The non-moving party may also include its own additional statement of facts that it contends are not in dispute. *Id.* Third, the moving party must then submit a reply statement of material facts in which it admits, denies, or qualifies the non-moving party's additional facts, if any. Loc. R. 56(d).

The court may disregard any statement of fact that is not supported by a specific citation to the record, and the court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." Loc. R. 56(f). Properly supported facts that are contained in a statement of material or additional facts are deemed admitted unless properly controverted. *Id.*

## III. LEGAL ANALYSIS

### A.    Hostile Work Environment

Count I of Heath's complaint, captioned "First Claim of Wrongful Discharge," alleges that the Postal Service "created an environment that was extremely

threatening and humiliating." ECF No. 1 at 10-11. I treat this claim as a hostile work environment claim under the Rehabilitation Act.[4]

In order to make out a hostile work environment claim, Heath must show that: (1) he was disabled; (2) he was subjected to uninvited harassment; (3) this harassment was because of his disability; (4) the harassment was so severe or pervasive that it altered the conditions of his work and created an abusive work environment; and (5) the harassment was both objectively and subjectively offensive. *McDonough v. Donahoe*, 673 F.3d 41, 46 (1st Cir. 2012). The Postal Service concedes that Heath was disabled, but argues that he cannot satisfy any of the remaining four elements. ECF No. 35 at 12-13. I find that the fourth prong of the analysis decides the issue, and accordingly focus on whether the harassment alleged by Heath was sufficiently severe or pervasive.

Determining whether harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" depends on all the relevant circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

[4] The exact contours of Heath's first claim are somewhat unclear. Heath generally treats the claim as a hostile work environment claim, *see* ECF No. 52 at 24, but also mentions a "wrongful discharge," *see id*. at 17. Because the claim has been treated as one alleging a hostile work environment in the parties' briefs, at oral argument, and before the EEOC, I do the same. If Heath intended to allege that the Postal Service is liable for firing Heath on September 9 on some basis other than discrimination based on a hostile work environment, he cites no authority in support of an alternative theory of liability. *See* ECF No. 52 at 16-18.

performance." *Id.* at 23.  The function of this analysis is to "separate the wheat from the chaff" – to distinguish actual harassment that gives rise to a cognizable claim from incidents that, while unfortunate, remain within the ambit of ordinary workplace unpleasantries.  *Alvarado v. Donahoe*, 687 F.3d 453, 461 (1st Cir. 2012). Accordingly, simple teasing, offhand comments, and brusque behavior on the part of supervisors do not, as a matter of law, create a hostile work environment.  *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011).  Neither does a single incident of harassment unless it is "extremely serious" or "egregious."  *Id.*; *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005).

Heath's hostile work environment claim is based explicitly on the events of September 9, 2006.[5]  A reasonable jury could not, however, find that the September 9 occurrence was severe or pervasive harassment that created an abusive work environment.  The September 9 encounter, as Heath has presented it, is a single incident where his supervisor yelled at him, gestured angrily, and sent him home. The incident may have been disrespectful toward Heath and unpleasant for him to experience, but it simply does not constitute the "extremely serious" or "egregious"

---

[5] The typical hostile work environment claim turns on "an aggregation of hostile acts extending over a period of time."  *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 18 (1st Cir. 2002).  However, Heath's complaint alleges that "on September 9, 2006, the USPS supervisor created an environment that was extremely threatening and humiliating," and that "Mr. Thurston's actions constituted severe and hostile behavior[.]"  ECF No. 1 at 10-11.  Thus, the Postal Service treats Heath's hostile work environment claim as limited to the events of September 9, 2006.  ECF No. 35 at 11.  In response, Heath references several statements of material fact as examples of the harassment to which he was subjected.  ECF No. 52 at 22.  Each of these statements relates only to the events of September 9, 2006.  ECF No. 32 at 23-26.  In fact, this section of Heath's opposition brief does not describe an incidence of harassment occurring other than on September 9.  *See* ECF No. 52 at 15-26.  Accordingly, I treat Heath's claim as a claim that the actions of Michael Thurston on September 9, 2006, created a hostile work environment.

conduct that is required to sustain a hostile work environment claim on a single incident. *See Ponte v. Steelcase, Inc.*, 741 F.3d 310, 320-321 (1st Cir. 2014) (noting that isolated instances of threatened rape or unwanted touching have been sufficiently "egregious" to support a hostile work environment claim). Accordingly, Heath's hostile work environment claim based on the events of September 9 cannot withstand summary judgment.

## B.  Failure to Accommodate

Next, Heath alleges that the Postal Service failed to accommodate his mental disability. ECF No. 1 at 11. To prevail on such a claim, a plaintiff must demonstrate that her employer failed to provide a reasonable accommodation despite knowledge of the plaintiff's disability. *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012). The plaintiff employee generally must show that she made a direct and specific request for the accommodation, unless the employer otherwise knew one was needed. *Id.*; *Reed v. LePage Bakeries,* 244 F.3d 254, 261 (1st Cir. 2001). "The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation." *Jones*, 696 F.3d at 89.

The parties have filed cross-motions for summary judgment on this claim. ECF No. 31 at 5; ECF No. 35 at 2. Cross-motions do not alter the summary judgment framework. *See Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither

alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.") (citations omitted).

Heath alleges that the Postal Service failed to accommodate him by not "prevent[ing] his supervisors from acting rudely and entering into unnecessary, stressful confrontations with Mr. Heath." ECF No. 31 at 5. He argues that after he realized the Postal Service's July 12, 2005 job offer would be inadequate to deal with his mental disabilities, the Postal Service ignored further requests for accommodation on his part. *See* ECF No. 78 at 3-4. The Postal Service responds that Heath did not make a sufficiently direct and specific request for an accommodation after signing the July 12 offer. ECF No. 35 at 18. They also argue that Thurston's behavior on September 9 did not represent a failure to provide any of the accommodations that Heath had requested. *Id.* at 21.

### 1.   The Scope of Heath's Claim

I first address the question of the scope of Heath's failure to accommodate claim. The Postal Service contends that Heath only exhausted the available administrative remedies as to the events of September 9, 2006, and that he cannot, therefore, obtain relief for any earlier events. *Id.* at 6-7.

As a general rule, the scope of a civil complaint that follows an administrative process is "limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Thornton v. United Parcel Service,*

*Inc.*, 587 F.3d 27, 31 (1st Cir. 2009) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir. 1990)).   Moreover, a federal employee proceeding on a disability discrimination complaint must initiate pre-complaint counseling within 45 days of "the matter alleged to be discriminatory[.]"  29 C.F.R. § 1614.105(a)(1).

Here, Heath initiated pre-complaint counseling on September 30, 2006, *see* ECF No. 41-7 at 2, and is thus restricted to obtaining relief for a failure to accommodate that occurred on or after August 16.  *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130-31 (1st Cir. 2009) (noting the inapplicability of the continuing violation doctrine to claims of failure to accommodate).   Because the events of September 9 were the only actions that Heath challenged during this period, *see* ECF No. 32, Heath's claim is limited to his allegation that the Postal Service failed to accommodate his disability on that day.  Events prior to September 9, 2006, however, are potentially relevant to the Postal Service's knowledge of Heath's disability and need for an accommodation on September 9.

### 2.    The Postal Service's Motion for Summary Judgment

I next address whether Heath adequately requested that the Postal Service accommodate his disability by having his supervisors avoid stressful or unnecessary confrontations with him.  Heath asserts that this request came in a letter that he sent to Michael Foster on July 28, 2005.  ECF No. 1 at 11; ECF No. 31 at 10-11.  The letter recounted a history of perceived "unfair actions" on the part of the Postal Service, and asked, "[w]hat would you suggest we do to implement the Mar 4, 1999

EEO settlement[?]"  ECF No. 38-3 at 2, 4.  The letter also asked the Postal Service to consider two different medical reports.  *Id*. at 4.

On its face, the letter makes no explicit request for an accommodation.  Even if a reasonable jury might infer that Heath intended the letter to make concrete requests, and not merely to initiate a dialogue, his requests were hidden in the text of a lengthy letter which in turn referenced other documents.  A reasonable jury could not conclude that the letter's indirect and equivocal manner of requesting that Heath not be confronted by supervisors satisfied the requirement of a specific and direct request for an accommodation.  Indeed, even Heath appears to concede the same.  *See* ECF No. 52 at 27-32 (arguing not that Heath made a specific and direct request, but that none was required).

However, a specific and direct request is not always necessary to give rise to an employer's duty to accommodate.  *Jones*, 696 F.3d at 89; *see also Reed*, 244 F.3d at 261 (the "reasonable accommodation requirement *usually* does not apply unless 'triggered by a request'") (emphasis added).  The request requirement exists because an employer will generally be unaware of an employee's disability and corresponding need for accommodation absent some communication from the employee.  *See Kiman v. N.H. Dep't of Corrs.*, 451 F.3d 274, 283 (1st Cir. 2006).  But if an employer already knows or should know about an employee's disability and attendant needs, the reason for requiring notice diminishes.  Accordingly, if an employer already knows of an employee's need for a specific accommodation, *see Jones*, 696 F.3d at 89, if the employee's disability prevents her from requesting an accommodation, or if "the

15

employee's need for an accommodation [is] obvious," an employer may still have a duty to accommodate, *Reed*, 244 F.3d at 261 n.7.

Considered in the light most favorable to Heath, this is an instance in which a jury might reasonably conclude that the Postal Service knew of Heath's need for an accommodation, or that Heath's need for accommodation was obvious. The Postal Service had received a report from Dr. Bourne which stated in part: "[Heath] should avoid stressful confrontations, and the employer should be thoughtful in how it deals with Mr. Heath . . . [u]nnecessary confrontation should be avoided." ECF No. 33-1 at 34. The report also included a recommendation that Heath "work with a supportive, understanding supervisor." *Id*. at 36. Heath referenced Dr. Bourne's report in his July 28, 2005 letter addressed to Foster, which concluded, "What can we do to assure that . . . [Dr. Bourne's] concerns for me are followed?" ECF No. 38-3 at 4. According to Heath, he thereafter met with Foster and Robinson to discuss the letter on multiple occasions. ECF No. 34-1 at 35.

Heath also spoke with Foster in June of 2005 about his concerns that Tom Robinson did not adequately understand his psychological issues and how to approach him appropriately. *See* ECF No. 77 at 12. Dr. Clemetson had previously alerted the Postal Service that "[f]rom the psychiatric point of view, it is very important that Heath not be harassed by his seniors at work," ECF No. 33-1 at 5, while Dr. Mitchell Pulver had written that Heath "continues to have panic attacks ... especially when he interacts with his supervisor," ECF No. 33-1 at 59.

Finally, Kathy Dyer had told Foster to be sensitive when communicating with Heath because of his psychological issues, *see* ECF No. 34-2 at 10, and also relayed to Foster Dr. Bourne's specific recommendation, based on Heath's "persistent depression [and] anxiety disorder [e]specially over workplace issues and conflicts," *see* ECF No. 33-1 at 36, that Heath's supervisors avoid stressful confrontations with him, ECF No. 34-2 at 12, 14.

Heath's disabling conditions (PTSD, depression, and anxiety) and his corresponding need for an accommodation (that his supervisors avoid confronting him) were either known to the Postal Service or were obvious.  Thus, Heath's failure to make a direct and specific request on the matter does not doom his claim.

In addition, there is a genuine dispute of fact as to whether Heath was denied the accommodation on September 9.  Heath's account of September 9 suggests that when he asked a co-worker to obtain a key for him rather than getting it himself, as instructed, Thurston "hollered" at him in front of several co-workers, ordered Heath to come to him, gestured angrily, and told him to go home after Heath stated that he wanted to show him documents evidencing his workplace restrictions and accommodations.  *See supra.*  Based upon this evidence, a jury could find that Thurston confronted Heath in an unnecessary and stressful manner that failed to accommodate Heath's emotional disability.  Thus, I conclude there are genuine issues of material fact as to whether the Postal Service failed to provide Heath with a reasonable accommodation.  The Postal Service's motion for summary judgment on Count II of Heath's complaint is denied.

17

### 3.      Heath's Motion for Summary Judgment

Crediting Thurston's version of events casts his actions on September 9 in a far different light than that portrayed by Heath.  Thurston avers that he approached Heath because Heath had violated Postal Service policy by asking a co-worker to sign out the key rather than doing it personally.  ECF No. 42 at 3.  He does not admit displaying any signs of anger or hostility, and notes that both he and Heath had to raise their voices to overcome the noise of mail sorting machines.  *Id.* at 2.  Thurston also denies that he ordered Heath to go home, claiming that Heath chose to leave on his own.  *Id.* at 3.  Based on this account, a jury could reasonably find that Thurston's interaction with Heath was necessary and non-confrontational, and therefore, did not violate Heath's need for an accommodation.  Accordingly, Heath's cross-motion for summary judgment is denied.

## C.     Breach of Settlement Agreement

Heath also asserts that the Postal Service breached one of its settlement agreements with him.[6]  ECF No. 1 at 12.  As an initial matter, I address the question that arose at oral argument as to whether the court has subject matter jurisdiction over Heath's claim.

Subject matter jurisdiction over claims against the federal government for breach of contract typically lies in the Court of Federal Claims, and not the district courts.  *See, e.g.*, *Panosh v. Shinseki*, 2012 WL 4589803, at *4-5 (D. Me. Aug. 13,

---

[6]  Heath's complaint alleges the breach of two settlement agreements, one dated March 26, 1999, and the other dated June 1, 2000.  ECF No. 1 at 3, 12.  At oral argument, however, Heath conceded that because the 1999 agreement relates only to Heath's physical, and not mental, disabilities, his claim properly involves just the 2000 agreement.

2012).  However, because the Postal Service is an entity separate from the United States, and because Congress has provided the district courts with original jurisdiction over matters involving the Postal Service, "[t]he prevailing view" is that there is "jurisdiction in the district courts over contract actions in which the Postal Service is a party regardless of the amount involved."  *Spodek v. United States Postal Serv.*, 35 F. Supp. 2d 160, 163 (D. Mass. 1999); *see also Benderson Dev. Co., Inc. v. United States Postal Serv.*, 998 F.2d 959, 962 (Fed. Cir. 1993) ("[W]hen the Postal Service exercises its authority to contract, it does so with the expectation that disputes arising from such contracts may be resolved, without regard to the amount in question, in the United States district courts.")  Accordingly, I conclude that subject matter jurisdiction is present.

The settlement agreement in question (the "2000 agreement") was reached on June 1, 2000, after Heath filed a complaint with the EEOC.  ECF No. 41-3 at 4; ECF No. 41 at 2.  The relevant provision states:

> Mr. Heath will seek an updated assessment of his physical and mental condition . . . [u]pon receipt of an updated [medical] assessment, Mr. Heath's representative will prepare a summary of Mr. Heath's medical restrictions for review by USPS medical personnel.  When the summary is agreed upon, the Postmaster and Mr. Heath will meet with Mr. Heath's supervisor to review these restrictions.   This review will be repeated upon the assignment of any new supervisor.

ECF No. 41-3 at 3.

Heath claims that the Postal Service breached the 2000 agreement when Michael Thurston and Michael Foster admitted that they had no knowledge of any job restrictions related to Heath's mental disabilities.  ECF No. 1 at 12.   According

to Heath, Thurston and Foster's purported ignorance is evidence that his supervisors had not properly reviewed his medical restrictions, as the 2000 agreement required. *Id*.

The Postal Service makes several arguments in support of summary judgment on this claim, alleging that the 2000 agreement was superseded by subsequent agreements, ECF No. 35 at 24, that it did not apply to Thurston, *id*. at 26, and that Heath cannot establish that he satisfied the conditions precedent required to obligate the Postal Service to review his restrictions with his supervisors, *id*. at 26-27.  I find this final argument persuasive.

The creation and provision of a summary of Heath's medical restrictions by "his representative" was a condition precedent to the Postal Service's obligation to review those restrictions with Heath and his supervisors.  *See* ECF No. 41-3 at 3; *see also* Restatement (Second) of Contracts § 224 (1981) ("A condition is an event . . . which must occur . . . before performance under a contract becomes due.").  In order to establish that this provision was binding against the Postal Service, therefore, Heath must show that the condition was satisfied.  *See Irving v. Town of Clinton*, 1998 ME 112, ¶ 4, 711 A.2d 141 ("An elementary rule of contract law is that the nonoccurrence of a condition discharges the parties from their duties under the contract.").  Yet Heath does not allege that a summary of his medical restrictions was ever prepared or provided to the Postal Service.  *See* ECF No. 1; ECF No. 52.  Heath's statement of material facts is silent on this matter, *see* ECF No. 55, and my review of the record reveals no evidence on this point.  If Heath cannot establish that he

obtained a summary of medical restrictions for his supervisors to review, the Postal Service cannot be liable for failing to have its supervisors review those restrictions.  I conclude that Heath has not created a triable issue of fact on this issue, and that the Postal Service's motion for summary judgment is properly granted.

## IV.  CONCLUSION

For the foregoing reasons, the Postal Service's motion for summary judgment (ECF No. 35) is **GRANTED** as to Counts I and III of Heath's complaint, and **DENIED** as to Count II of Heath's complaint.  Heath's cross-motion for summary judgment (ECF No. 31) is **DENIED**.

**SO ORDERED.**

Dated:  May 14, 2015                              /s/ Jon D. Levy
                                                  U.S. District Judge